**STATE of Tennessee, Appellant,**

v.

**Debbie Sue MOORE, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

June 26, 1989.

Charles W. Burson, Atty. Gen. & Reporter, Kathy M. Principe, and Kymberly Lynn Anne Hattaway, Asst. Attys. Gen., Nashville, for appellant.

George E. Penn, II, Banks, Penn and Routh, Knoxville, for appellee.

## OPINION

HARBISON, Justice.

Appellee, Debbie Sue Moore, pled guilty to three of eighty-four counts of a presentment returned against her in Knox County, Tennessee. The presentment, returned on September 8, 1986, charged her with various counts of forgery, passing forged checks, receiving and concealing stolen property, and petit larceny. The State agreed not to prosecute the remaining counts of the presentment, and appellee was permitted to reserve a certified question of law for appeal pursuant to Rule 37(b)(2)(i), Tennessee Rules of Criminal Procedure. In the reserved question, appellee insisted that the charges should be dismissed because of violation by the State of the provisions of Article III of the Interstate Compact on Detainers, the Compact and administrative provisions related to it being codified in this State as T.C.A. §§ 40–31–101 through 108.

The trial judge overruled the motion and sentenced appellee to concurrent terms of eight years on each of the three counts to which she had entered guilty pleas. The Court of Criminal Appeals reversed, holding that there had been a violation by the State of the Interstate Compact. The Court of Criminal Appeals and appellee have relied heavily on the previous decision of this Court in *Nelms v. State,* 532 S.W.2d 923 (Tenn.1976). We are of the opinion that the *Nelms* case, *supra,* is not controlling. We further are of the opinion that under the circumstances of this case, no violation of the Compact has been shown.

### A. THE FACTS

During the World's Fair held in Knoxville, Tennessee, in the summer of 1982, appellee and others came into possession of a series of stolen payroll checks of the City of Knoxville. Appellee proceeded to forge and pass twenty-six of these instruments. She was at the time of her trial in February 1987 about thirty-two years of age. In addition to the Tennessee charges, appellee was wanted on similar charges in at least five other states.

In October 1984, appellee was incarcerated in Florida on a series of charges similar to those involved in Tennessee and other states. In January 1985, she filed a plea of *nolo contendere* to six of the Florida charges. She was convicted and sentenced on those six counts and was held by the Department of Corrections in Florida until June 26, 1986, when she was released from custody in Florida permanently and delivered to the custody of the State of Indiana. She had been tried and convicted in Indiana on similar charges in the latter part of 1985. It was from Indiana, not Florida,

that Tennessee finally obtained custody of the appellee in October 1986.

Some four years earlier, under date of October 7, 1982, a warrant for the arrest of appellee had been issued out of the General Sessions Court of Knox County, Tennessee, pursuant to an affidavit of complaint filed on that same day by a Knoxville police officer. The affidavit of complaint charged that appellee had transferred a stolen and forged document, a City of Knoxville payroll check, dated August 20, 1982, the offense having occurred at a local grocery store in Knox County. The arrest warrant was never served, and no further action was taken on the Tennessee charges until May 1985. When Tennessee officials learned that appellee was incarcerated in Florida, under date of May 17, 1985, they sent a certified copy of the outstanding arrest warrant with a cover letter to the Department of Corrections of Florida in Tallahassee, requesting that the warrant be placed as a detainer against appellee. The letter from an investigator in the Office of the Knox County District Attorney General was marked received in Florida on May 20, 1985, with a notation "Interstate Compact."

Prior to receipt of the Tennessee request for detainer, Florida corrections officials had received similar requests from four other states, the first of these being from the State of Indiana.

Florida corrections officials sent to the appellee Form I under the Interstate Compact to notify her of the pending charges in Tennessee and of her rights under the Interstate Compact.

On August 21, 1985, appellee executed Detainer Form II, requesting a final disposition of the charges against her in Tennessee. On that same date the superintendent of the correctional institution executed Detainer Form III, a certificate of inmate status, and Detainer Form IV, which was an offer to deliver temporary custody to Tennessee.

On that same date appellee and the Florida officials also executed similar forms for charges pending against her in four other states: Indiana, Pennsylvania, Kansas and Connecticut.

Under date of September 5, 1985, the Florida officials sent to the state of Indiana the detainer forms executed by appellee with respect to charges pending there. The detainer forms executed by her and by the Florida correctional officials relative to the charges pending in the other states, including Tennessee, were not sent to the officials in those states until several months after the appellee had been sent to Indiana, tried and sentenced there, and returned to Florida. She was delivered to Indiana officials for trial on November 9, 1985, and was returned to Florida on December 30, 1985, after her trial and sentence in Indiana.

It was not until May 23, 1986, that Florida officials mailed forms II, III and IV to the other four states, including Tennessee. In a cover letter it was explained that appellee's Florida sentence expired on May 26, 1986, at which time she would be delivered to the Indiana Department of Corrections to serve her sentence in that state.[1] In the cover letter it was stated that the Florida administrator of the Interstate Compact had only received these executed forms on the date of the letter, May 23, 1986. Apparently prison officials had held them since their execution on August 21, 1985.

The letter to the Tennessee officials was sent by certified, return receipt mail as required by Article III(b) of the Compact. It was received in Tennessee on June 2, 1986.

Appellee, however, left the custody of the State of Florida permanently on June 26, 1986, only twenty-four days after Tennessee had, for the first time, been apprised of the fact that appellee had requested disposition of the Tennessee charges pursuant to the Compact. No detainer had at that time been lodged by Tennessee with Indiana officials, although the State of Indiana was notified by the State of Florida of the detainers which had been lodged from Tennessee and several other states.

---

1. The transfer actually occurred one month later, on June 26, 1986.

On September 8, 1986, as previously stated, a presentment against appellee was returned by the Knox County Grand Jury. It was duly sent to the State of Indiana, and on September 24, 1986, the Knox County District Attorney General's Office sent a letter to Indiana authorities requesting their help in expediting the return of appellee to this jurisdiction for trial. The letter requested that the prison superintendent ask appellee to sign a new Form II so that she might be returned to Tennessee by October 8, 1986, when her case was set for trial. The state also sent Form V, a request for temporary custody and Form VI, evidence of an agent's authority to act and to receive custody of appellee. Promptly, on September 29, Indiana officials informed the Tennessee authorities that appellee would not sign new detainer forms, and that she insisted that the 180 day period for disposition of the Tennessee charges had already expired.

Tennessee obtained custody of appellee from Indiana under Article IV of the Compact, which allows the receiving state to initiate proceedings and requires that trial be commenced within 120 days of the arrival of the prisoner in the receiving state. There is no claim that Tennessee violated the terms of Article IV if they govern the present case. The original trial date was rescheduled, counsel was appointed for appellee, and the charges were disposed of in February 1987, subject to appellee's motion to dismiss for failure of the state to comply with Article III.

The Court of Criminal Appeals was of the opinion that the 180 day period for disposition of the Tennessee charges following the request by the prisoner commenced on the day she signed Form II, August 21, 1985. The court concluded that by the time Tennessee authorities were notified of her execution of this document, the time within which the state might try her "had already expired."

### B. OUR CONCLUSIONS

■ We respectfully disagree with the Court of Criminal Appeals. In our opinion the time within which Tennessee was required to proceed under Article III did not commence until June 2, 1986, the date on which Tennessee received notice that appellee had requested prompt disposition of the charges. Twenty-four days of that time expired before the prisoner permanently left the custody of Florida, the sending state. Thereafter the sending state was not in position to deliver her custody to Tennessee, and, in our opinion, the efficacy of her Form II expired at that time. Tennessee promptly attempted to obtain custody of appellee from Indiana, to which state she had been delivered. Tennessee officials did comply with the provisions of Article IV and timely disposed of the charges under that Article.

There is no conflict in this disposition of the case and the decision of the Court in *Nelms v. State*, 532 S.W.2d 923 (Tenn. 1976). In that case the prisoner, who was being held in Iowa, had been indicted in Tennessee. A copy of the indictment was furnished to Iowa authorities. They promptly notified Tennessee of the executed request by the prisoner for disposition of the Tennessee charges. From and after that point there was dereliction on the part of both the Tennessee authorities and Iowa authorities in not bringing the prisoner to trial. With respect to those delinquencies by the two states involved, the Court held that the prisoner could not be charged or held responsible.

Clearly and unequivocally, however, the Court held that the prisoner was onerated with the burden of delivering to the receiving state proper notice of her request for disposition of charges pending there. The Court noted the contention by Tennessee that Iowa authorities had negligently failed to provide them with an offer of temporary custody. The Court said:

This position necessarily encompasses the view that the burden is on the defendant to insure that he is temporarily released from custody so that he may stand trial in another state. The statute clearly does not place such a burden on the defendant. It merely requires that *the defendant cause "... to be delivered to the prosecuting officer and the ap-*

*propriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment ..."* T.C.A. § 40–3901, Article III(a). *The petitioner clearly complied with this provision.*

532 S.W.2d at 926 (emphasis added).

The Court therefore held that the prisoner has responsibility for giving notice to the receiving state of his or her request under Article III. If this task is entrusted to officials of the sending state, the responsibility and burden are still on the prisoner. The receiving state cannot be charged with the burden of requesting or compelling temporary custody from the sending state until it has received notice that the prisoner has made his or her request.

In that respect, this case differs markedly from *Nelms.* In the present case the prisoner executed her request on August 21, 1985, but the prison officials did not even send it to the Florida administrator of the Compact until May 23, of the following year.[2] Apparently the reasoning of the Florida officials was that the Indiana detainer was the first lodged against appellee, and thus, it should be the first to be honored. Therefore, they delayed sending the requests to the other states until after disposition of the Indiana charges, and even then they waited about five months after the return of the appellee to Florida before doing so. In our opinion, under the terms of the Compact, the prisoner, not the receiving states, must be charged with this delay, because it clearly is her burden to see that notice to the receiving states is delivered in order to trigger the 180 day period provided in Article III of the Compact.

In the *Nelms* case it was the delay of the sending state in complying with Article V which was held not to be charged to the prisoner. The prisoner's obligations under Article III had clearly been complied with in that case, but they were not complied with in the present case.

The Compact speaks in terms of a sending and a receiving state. Of course, there may be situations, such as the present case, in which there are numerous states involved. After Florida officials had sent the appellee permanently to Indiana in June 1986, Florida was no longer a sending state and could no longer meet the provisions of the Compact with respect to the present case. Indiana was not bound by the Tennessee detainer, and it was necessary for Tennessee to make a new request for custody to a different state, not to the sending state in which the prisoner's initial request originated. After June 26, 1986, appellee's request under Article III could no longer be complied with by Florida, nor could the receiving state, Tennessee, return custody of the prisoner to Florida as a sending state under the facts of this case. In our opinion, therefore, Tennessee was entitled to proceed under Article IV to request custody from Indiana. It did so and disposed of the charges in accordance with the provisions of that Article. Put another way, only twenty-four days of the 180 day period provided in Article III were ever chargeable to Tennessee, June 2 through June 26, 1986. From and after that time Florida had permanently relinquished custody of the prisoner to another jurisdiction with which no detainer had yet been placed.

In the case of *Burns v. State,* 578 S.W.2d 650 (Tenn.Crim.App.1978), the Court of Criminal Appeals held that delay of officials in the sending state in giving notice to the receiving state of a prisoner's request under Article III for disposition of the charges was chargeable to the receiving state. In our opinion that decision was erroneous, and it is overruled. The Court of Criminal Appeals relied upon the *Nelms* case, *supra,* in reaching that decision, but, as previously stated, the *Nelms* case did not involve notice under Article III at all and is not apposite to that issue.

Insofar as it conflicts with the present case, the decision of the Court of Criminal Appeals in *State v. Black,* 594 S.W.2d 738

---

**2.** Article VII of the Compact requires each state to designate an official to administer the agreement. T.C.A. § 40–31–107 authorizes the gover-

nor of this state to make that designation for this jurisdiction.

(Tenn.Crim.App.1979) is also overruled. The same is true with other opinions of that court suggesting that the time period contained in Article III is activated on the date when the prisoner delivers a request for disposition to officials of the sending state rather than upon receipt of notice by the requesting state. *See State v. Suarez,* 681 S.W.2d 584 (Tenn.Crim.App.1984) and *State v. Green,* 680 S.W.2d 474 (Tenn.Crim. App.1984).

In our opinion the receiving state cannot be charged with attempting to try the prisoner within 180 days until the receiving state has been given notice, by the prisoner or by officials of the sending state, of a request to proceed under Article III. Once that burden has been satisfied by the prisoner, the receiving state must, of course, comply with the terms of the Compact. There is a division of authority on this point. A few states have calculated the time from the date of the signing of the request for disposition, Form II, regardless of whether the receiving state receives the request or not. *See, e.g., McCallum v. State,* 407 So.2d 865 (Ala.Crim.App.1981); *People v. Daily,* 46 Ill.App.3d 195, 4 Ill. Dec. 756, 360 N.E.2d 1131 (1977); *Commonwealth v. Martens,* 398 Mass. 674, 500 N.E.2d 282 (1986), *cert. denied* 481 U.S. 1041, 107 S.Ct. 1982, 95 L.Ed.2d 821 (1987); *State v. Wells,* 186 N.J. Super. 497, 453 A.2d 236 (1982); and *People v. Pellgerino,* 131 Misc.2d 118, 499 N.Y.S.2d 841 (Sup.Ct. 1986).

By far a greater number of cases, however, have reached the opposite conclusion, holding that the prosecutor or court in the receiving state cannot reasonably be expected to proceed until receipt of notice of the prisoner's request. *See, e.g., Young v. Mabry,* 471 F.Supp. 553 (E.D.Ark.1978), *aff.* 596 F.2d 339 (8th Cir.), *cert. denied* 444 U.S. 853, 100 S.Ct. 107, 62 L.Ed.2d 69 (1979); *Beebe v. Vaughn,* 430 F.Supp. 1220 (D.Del.1977); *Spears v. State,* 280 Ark. 577, 660 S.W.2d 913 (1983); *People v. Bielecki,* 41 Colo.App. 256, 588 P.2d 377 (1978); *State v. Braswell,* 194 Conn. 297, 481 A.2d 413 (1984), *cert. denied sub nom., Braswell v. Connecticut,* 469 U.S. 1112, 105 S.Ct. 793, 83 L.Ed.2d 786 (1985); *State v.*

*Minnick,* 413 So.2d 168 (Fla.Dist.Ct.App. 1982); *Pinnock v. State,* 384 So.2d 738 (Fla.Dist.Ct.App.1980); *Thompson v. State,* 186 Ga.App. 379, 367 S.E.2d 247 (1988); *Scrivener v. State,* 441 N.E.2d 954 (Ind. 1982); *Holland v. State,* 265 Ind. 216, 352 N.E.2d 752 (1976); *Sweat v. Darr,* 235 Kan. 570, 684 P.2d 347 (1984); *State v. White,* 234 Kan. 340, 673 P.2d 1106 (1983); *Hines v. State,* 58 Md.App. 637, 473 A.2d 1335 (1984); *State v. Walton,* 734 S.W.2d 502 (Mo. *en banc* 1987); *State v. McGann,* 126 N.H. 316, 493 A.2d 452 (1985); *State v. Ternaku,* 156 N.J.Super. 30, 383 A.2d 437 (1978); *State v. Reitz,* 26 Ohio App.3d 1, 498 N.E.2d 163 (1984); *Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605 (1973); *State v. Moosey,* 504 A.2d 1001 (R.I.1986). *See generally* Annot., 98 A.L.R.2d 160 § 15[a] (1980).

In these cases it has been noted that it would be contrary to the public interest to start the 180 day period before actual receipt by the prosecutor of the prisoner's request and that this could not have been the legislative intent in enacting the Compact. Article III requires that the receiving state proceed after the prisoner *"shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of his imprisonment and his request for final disposition" of the charges pending there. (Emphasis added).

In this opinion we have assumed that the lodging of an unserved arrest warrant by the receiving state would be sufficient to justify a "detainer" in the sending state and to activate the terms of Article III of the Compact. This was the holding of the Court of Criminal Appeals in *State v. Black,* 594 S.W.2d 738 (Tenn.Crim.App. 1979). The court cited no authority, other than the general provisions of Article IX of the Interstate Compact that the agreement should be liberally construed.

Throughout the Compact, however, reference is made to untried indictments, informations or complaints and to detainers based thereon. The terms of the Compact clearly fit much better when the receiving state proceeds after formal indictment or

presentment. This was the situation in *Nelms, supra,* and we are of the opinion that this was probably the original intent of the drafters. The Compact refers at several points to continuances or other proceedings in the "court having jurisdiction of the matter" in the receiving state. T.C.A. § 40–31–102 provides:

> The phrase "appropriate court" as used in the agreement on detainers shall, with reference to the courts of this state, mean a court of record with criminal jurisdiction.

A general sessions court, out of which the warrant in the present case was issued, is not a court of record for purposes of the disposition of felony cases. It is simply a court to which an arrest warrant may be returned and a preliminary hearing held. *See* Rule 5(d), Tennessee Rules of Criminal Procedure. Nothing was pending in the courts of record, the criminal courts, of Knox County until the presentment was returned in this case in September 1986.

In our opinion it would be far better procedure for the state to proceed under the Compact after indictment or presentment, rather than on mere unserved warrants. The Compact, in addition to referring to indictments and informations, also refers to "complaints." That term is used in a number of jurisdictions as being the equivalent of an indictment, presentment or information. *See Blackwell v. State,* 546 S.W.2d 828, 829 (Tenn.Crim.App.1976).[3]

In several jurisdictions it has been held that an arrest warrant, used as a detainer, does not activate Article III of the Compact. *See United States v. Bottoms,* 755 F.2d 1349 (9th Cir.1985); *Blakey v. District Court,* 755 P.2d 1380 (Mont.1988); and *Locklear v. Commonwealth,* 7 Va.App. 659, 376 S.E.2d 793 (1989). To the contrary is the case of *State v. Smith,* 73 Md.App. 378, 534 A.2d 371 (1987), but review has been granted in that case, 312 Md. 427, 540 A.2d 489 (1988). At the present time the decision of the court of last resort in Maryland has not been released.

Regardless of the fact that formal indictments or presentments fit much more meaningfully and appropriately into the terms and provisions of the Interstate Compact on Detainers, it nevertheless appears that officials in Tennessee and other states have frequently proceeded on bare arrest warrants and have requested "detainers" thereon.

There is no definition of the term "detainer" in the Compact. In *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), the Supreme Court of the United States held that a writ of habeas corpus *ad prosequendum* to compel the presence of a state prisoner was not a "detainer" under the Compact. The Court said:

> The agreement itself contains no definition of the word "detainer." The House and Senate reports, however, explain that "[a] detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction."

436 U.S. at 359, 98 S.Ct. at 1846 (citing H.R.Rep. No. 91–1018, p. 2 (1970); S.Rep. No. 91–1356, p. 2 (1970) U.S.Code Cong. & Admin.News 1970, p. 4864).

In *Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985) the Supreme Court of the United States held that a warrant for arrest based upon a parole violation was not a "detainer" under the Compact. The Court said, however:

> A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent.

473 U.S. at 719, 105 S.Ct. at 3403. *See also United States v. Dixon,* 592 F.2d 329 (6th Cir.) *cert. denied,* 441 U.S. 951, 99 S.Ct. 2179, 60 L.Ed.2d 1056 (1979) where the Court of Appeals for the Sixth Circuit stated:

> A detainer is simply a notice filed with the institution in which a prisoner is serv-

---

**3.** In *Blackwell* the Tennessee Court of Criminal Appeals held that a capias for an alleged proba- tion violation was not an "untried complaint" under the Compact.

ing a sentence, advising that the prisoner is wanted to face pending criminal charges elsewhere, and requesting the custodian to notify the filing jurisdiction prior to releasing the prisoner. Filing a detainer is an informal process that generally can be done by any person who has authority to take a prisoner into custody. Furthermore, a detainer remains lodged against the prisoner without any action being taken on it. (citations omitted).

592 F.2d at 332, n. 3. *See also People v. Yellen,* 704 P.2d 306 (Colo.) *cert. denied* 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 582 (1985); *People v. Browning,* 104 Mich.App. 741, 306 N.W.2d 326 (1981); and *Gilbreath v. State,* 651 P.2d 699 (Okla.Crim.1982).

■ While we think the better view and the more consistent interpretation of the Compact is that an untried "indictment, information or complaint" is a charging instrument upon which the requesting state may proceed to trial, and not merely a warrant of arrest, the general practice of prosecuting officials in this and other states seems to have been otherwise. Accordingly, we do not at present overrule the holding in *State v. Black,* 594 S.W.2d 738 (Tenn.Crim.App.1979) that a warrant of arrest can trigger the provisions of the Interstate Compact. Proceeding on a bare warrant, however, obviously can produce situations of unusual complexity as shown by the facts of the instant case.

■ Little emphasis has been given by the parties to the terms of Article VI of the Compact, but we think they are important in the present case with respect to our holding that Florida was not in position to act as a sending state under the Compact after June 26, 1986. Article VI(a) provides:

In determining the duration and expiration dates of the time periods provided in articles III and IV of this agreement, the running of such time period shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter.

All parties concede that if the provisions of Article III had been activated on August 21, 1985, as held by the Court of Criminal Appeals, the time periods would have been tolled for the period while appellee was absent from Florida and in Indiana to stand trial.

In a number of cases it has been held that the phrase "unable to stand trial" in Article VI(a) includes a situation where a prisoner is lodged in a state or federal facility other than in the sending or receiving state. *See People v. Jones,* 173 Cal. Rptr. 169 (Cal.Dist.Ct.App.1981); *People v. Quintana,* 682 P.2d 1226 (Colo.App.1984); *Spears v. State,* 280 Ark. 577, 660 S.W.2d 913 (1983) (time limits are tolled during the periods when the prisoner is removed from the custodial place of incarceration to a place other than the demanding jurisdiction); *State v. Ristau,* 305 N.W.2d 499 (Iowa 1981). In *State v. Minnick,* 413 So.2d 168 (Fla.Dist.Ct.App.1982) the trial judge had dismissed an information charging the defendant with burglary in Florida on the grounds that the state had violated the Interstate Compact. Minnick was incarcerated in Virginia. Both New Mexico and Florida had charges outstanding against him, and both filed detainers with the Virginia authorities. The Florida Court of Appeals held that the 180 day period provided in Article III was tolled, "during the time appellee was in custody of New Mexico authorities and unavailable to stand trial on the Florida charge." 413 So.2d at 169. *See also, State ex rel. Tryon v. Mason,* 679 S.W.2d 268 (Mo.1984), *cert. denied sub nom. Tryon v. Missouri,* 470 U.S. 1056, 105 S.Ct. 1765, 84 L.Ed.2d 826 (1985).

In our opinion after the appellee was incarcerated in Indiana and was permanently in the custody of that state from and after June 26, 1986, Tennessee could no longer look to Florida as a sending state, and the Article III period, which was activated on June 2, no longer ran as between the states of Florida and Tennessee.

The judgment of the Court of Criminal Appeals is reversed and that of the trial court is reinstated. Costs are taxed to appellee. The cause will be remanded to

the trial court for any further proceedings which may be necessary.

DROWOTA, C.J., and FONES, COOPER and O'BRIEN, JJ., concur.