Arthaniel L. WOMBLE, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee,
at Knoxville.

March 19, 1997.

. Permission to Appeal
Denied by Supreme Court Nov. 3, 1997.

A. Christian Lanier, III, Chattanooga, for Appellant.

Charles W. Burson, Attorney General and Reporter, Darian B. Taylor, Assistant Attorney General, Nashville, William H. Cox, III, District Attorney General, Thomas Evans, Asst. District Attorney General, Chattanooga, for Appellee.

## OPINION

HAYES, Judge.

The appellant, Arthaniel L. Womble, appeals the dismissal of his petition for post-conviction relief by the Criminal Court of Hamilton County. The appellant is currently incarcerated in the Department of Correction pursuant to his conviction, on January 9, 1992, for conspiracy to possess more than three hundred grams of cocaine. The appellant asserts that his trial counsel was ineffective under the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution.

Following a thorough review of the record, we affirm the judgment of the post-conviction court.

### Analysis

With respect to claims of ineffective assistance of counsel, the Sixth Amendment to the United States Constitution places the burden upon the appellant to demonstrate that his attorney's performance was (1) deficient, i.e., outside the range of competence demanded of attorneys in criminal cases, and (2) prejudicial, i.e., the result of the trial is unreliable or the proceedings were fundamentally unfair. *Hatmaker v. State*, No. 03C01–9506–CR–00169, 1996 WL 596949 (Tenn.Crim.App. at Knoxville, October 18, 1996)(citing *Lockhart v. Fretwell*, 506 U.S. 364, 369–372, 113 S.Ct. 838, 842–844, 122 L.Ed.2d 180 (1993); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975)).[1] *See also Tidwell v. State*, 922 S.W.2d 497, 499–500 (Tenn. 1996); *Davis v. State*, 912 S.W.2d 689, 697 (Tenn.1995). This standard applies to the

---

1. Contrary to the appellant's contention in his brief, Justice O'Connor in her concurring opinion in *Lockhart* observed that, with respect to the prejudice inquiry under *Strickland*, the determinative question—whether there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different—remains unchanged. *Lockhart*, 506 U.S. at 373–374, 113 S.Ct. at 845 (O'CONNOR, J., concurring). Justice O'Connor explained:

This case ... concerns the unusual circumstance where the defendant attempts to demonstrate prejudice based on considerations that, as a matter of law, ought not inform the inquiry.... Specifically, today we hold that the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless under current governing law, even if the objection might have been considered meritorious at the time of its omission.

*Id.*

similar right to counsel provisions of the Tennessee Constitution. *Id.*

More generally, in post-conviction proceedings, the burden is upon the appellant to establish by a preponderance of the evidence the allegations in his petition. *Tidwell,* 922 S.W.2d at 500; *Davis,* 912 S.W.2d at 697. On appeal, the factual findings of the post-conviction court are conclusive unless the evidence in the record preponderates against the court's judgment. *Id.* The record before us reflects the appellant's failure to meet his burden.

We only find it necessary to address in detail one of the contentions underlying the appellant's claim of ineffective assistance of counsel: the appellant's argument that counsel was ineffective in failing to request the dismissal of the indictment following the expiration of the 180 day time limitation set forth in Article III(a) of the Interstate Compact on Detainers ("the Compact") and in failing to raise this issue on appeal. Tenn. Code Ann. § 40–31–101 (1990). Article III(a) provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court ... written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint....

*Id.* If a prisoner is not brought to trial within the specified time, the charges against him must be dismissed with prejudice. *Id.* at Article V(c).

For the purpose of clarification, we will outline the apparent sequence of events culminating in the appellant's conviction for the instant offense.[2] The instant offense occurred on August 1, 1990, and the appellant was apprehended and arrested by the Chattanooga Police Department. He was charged with possession of more than 300 grams of cocaine. At this time, the appellant was evidently released on bond and traveled to Dalton, Georgia. On August 22, 1990, the appellant was arrested by the Dalton Police Department for violation of the Georgia Controlled Substances Act and for simple battery. On September 3, the appellant was arrested by the Georgia State Patrol and charged with being an Habitual Violator and having no proof of insurance.

Following his sojourn in Georgia and, apparently, without consulting the Georgia authorities, the appellant decided to return to Tennessee. Accordingly, on November 13, 1990, he was arrested by the Chattanooga Police Department for assault. On December 5, 1990, the appellant was arrested by the Hamilton County Sheriff's Department and again charged for the August 1, 1990, offense of possession of more than 300 grams of cocaine. The record next reflects that, on December 14, 1990, the appellant was arrested by the Sheriff's Department in Dalton, Georgia for being a fugitive.

Evidently, the Georgia authorities subsequently released the appellant, as, on January 7, 1991, the appellant celebrated the new year with yet another arrest by the police department in Dalton, Georgia, for simple battery and pointing a pistol at another. On February 11, 1991, the appellant was convicted of the previous charges of being an habitual violator and possessing no proof of insurance. He was sentenced to five years incarceration in the Georgia Department of Corrections, but was placed on probation for one year, fined, and assigned Public Service Work. On March 27, 1991, the appellant was also convicted on the basis of the charges for violation of the Georgia Controlled Substances Act and for simple battery. He was sentenced to five years incarceration in the Georgia Department of Corrections.

On May 16, 1991, pursuant to the Interstate Compact on Detainers, Walter Zant, the superintendent of the Georgia prison in which the appellant was incarcerated, sent the appellant a "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," concerning the

2. We note at the outset that the appellant's trial occurred in Hamilton County in January, 1992.

charge of possession of more than 300 grams of cocaine still pending in Hamilton County, Tennessee.[3] *See* Tenn.Code Ann. § 40–31–101 at Article III(c). On May 17, 1991, the appellant signed a request for disposition of the Tennessee charge. Superintendent Zant completed and signed a "Certificate of Inmate Status" pursuant to Article III(a) of the Compact and an "Offer to Deliver Temporary Custody" pursuant to Article V(a). Tenn. Code Ann. § 40–31–101. It is unclear from the record when the District Attorney General in Chattanooga or the Hamilton County Criminal Court received the appellant's notice. However, on June 18, 1991, an Assistant District Attorney General signed a document authorizing Hamilton County deputies to transfer the appellant from the Georgia Department of Corrections to Hamilton County, Tennessee, on August 29, 1991. Moreover, the record reflects that, on August 29, 1991, the appellant was again arrested by the Hamilton County Sheriff's Department pursuant to the possession charge.

On October 10, 1991, the Hamilton County Grand Jury returned an indictment charging the appellant with possession of more that 300 grams of cocaine in violation of Tenn. Code Ann. § 39–17–417(a)(4) and (j)(5) (1991). On October 17, 1991, the District Attorney General received notice from the Georgia Department of Corrections that the appellant had received a "Certificate of Conditional Transfer," effective October 22, 1991, and would "no longer be wanted by the Department of Corrections . . . ." The Certificate of Conditional Transfer additionally provided that, if the appellant were released from the custody of the state of Tennessee prior to the expiration of his Georgia sentence on March 20, 1996, he would be placed on parole in Georgia and required to participate in a drug counseling program and submit to periodic urinalyses.

At the post-conviction hearing, the appellant's trial attorney recalled a hearing on October 22, 1991, at which the parties discussed the 180 day time limitation of the Interstate Compact on Detainers. He believed that the appellant's trial occurred within the 180 day time limitation. He further remembered examining the Certificate of Conditional Transfer. He called the Georgia authorities and discovered that the certificate, in effect, granted the appellant "an outright parole." Therefore, on December 3, 1991, the appellant's attorney filed a motion for bond. On December 11, 1991, the trial court denied the appellant's motion. On the same day, the Grand Jury returned another indictment charging the appellant with conspiracy to possess more than 300 grams of cocaine and attempt to possess more than three hundred grams of cocaine. *See* Tenn. Code Ann. §§ 39–12–101, 39–12–103 (1991). On the basis of this indictment, the appellant's case proceeded to trial on January 7, 1992.

The appellant contends that he should have been tried in November, 1991, within 180 days of May 16, 1991, the date on which he signed the "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," or within 180 days of May 17, 1991, when Georgia Superintendent Zant signed and forwarded the notice and other requisite documents to Tennessee. The State argues that the Compact required that the appellant be tried within 180 days of the notice's receipt by Tennessee authorities. The State contends that the appellant failed to introduce any proof at the post-conviction hearing concerning the date on which Hamilton County received notice. Therefore, he has not met his burden of proof. Additionally, the State asserts that the record supports the trial court's conclusion that, as of October, 1991, the appellant was effectively on parole, and, accordingly, was not entitled to the Compact's protection.[4]

■ Initially, the time within which Tennessee is required to proceed under Article

3. We assume, on the basis of this notice, that Tennessee in fact lodged a detainer against the appellant.

4. The State also argues that the appellant has failed to demonstrate prejudice, as, had defense counsel raised the issue before the trial court, the State could have obtained a continuance pursuant to the Compact. First, trial counsel's testimony at the post-conviction hearing indicates that the issue *was* raised before the trial court. However, defense counsel apparently concluded that no objection was warranted, and the State failed to request any continuance or extension of the Compact's time limitation. Second, while we agree that, under the Compact, all delay in excess of 180 days does not mandate the dismissal of the indictment, *Nelms v. State*, 532 S.W.2d

III does not commence until Tennessee receives notice that the appellant has requested prompt disposition of the charges. *State v. Moore*, 774 S.W.2d 590, 593 (Tenn.1989). In *Moore*, the supreme court noted, "It would be contrary to the public interest to start the 180 day period before actual receipt by the prosecutor of the prisoner's request." *Id. See also State v. Hill*, 875 S.W.2d 278, 281 n. 4 (Tenn.Crim.App.1993); *Clark v. State*, No. 02C01–9112–CR–00273, 1993 WL 188052 (Tenn.Crim.App. at Jackson, June 2, 1993). *See also Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). The only evidence contained in the record relating to the receipt of the appellant's notice by the Tennessee authorities is the June 18, 1991, document designating agents of the state of Tennessee to effect the transfer of the appellant from the Georgia Department of Corrections to Hamilton County. Assuming that this document was issued in response to the appellant's notice, the 180 day time limitation began to run sometime between May 17, 1991, and June 18, 1991. Thus, the Compact required that the appellant be tried, at the very latest, in December, 1991. The appellant was tried in January, 1992.

▉ Assuming that the appellant has met his burden of establishing the State's receipt of the notice in May or June, we agree with the State that the record supports the trial court's conclusion that, in October, the Georgia Certificate of Conditional Transfer placed the appellant on parole. *See, e.g., State v. Chapman*, 20 Conn.App. 205, 565 A.2d 259, 261–262 (1989)(the record supported the trial court's factual determination that, pursuant to a Georgia certificate of conditional transfer, the appellant was no longer serving a term of imprisonment within the meaning of the Interstate Compact on Detainers and was not entitled to the benefit of the speedy trial provision of the statute). Moreover, we hold that the protections of the Compact do not extend to a defendant who has been placed on parole in the sending state.

▉ The remedial nature of the Compact requires that it be liberally construed in favor of those it was intended to benefit. *Nelms*, 532 S.W.2d at 927. *See also* Tenn. Code Ann. § 40–31–101 at Article IX ("[t]his agreement shall be liberally construed so as to effectuate its purposes"). However, we must still ask *who* the legislature intended to benefit in enacting the Compact. In applying and construing a statute, a court's primary object is to determine the legislative intent. *State v. Smith*, 893 S.W.2d 908, 917 (Tenn.1994), *cert. denied*, ⎯ U.S. ⎯, 116 S.Ct. 99, 133 L.Ed.2d 53 (1995). In doing so, the court must first look to the statute itself and rely, when possible, upon the ordinary meaning of the language and terms used, refraining from any forced or subtle construction to limit or extend the statute's meaning. *Id.* The legislature's statement of the purposes of the Compact refers to *"prisoners"* and "programs of *prisoner* treatment and rehabilitation." Tenn.Code Ann. § 40–31–101 at Article I. Article III specifically refers to *"a term of imprisonment in a penal or correctional institution"* and provides that Article III is applicable *"during the continuance* of the *term of imprisonment."* Thus, the 180 day limitation only applies "during the continuance of [a] *term of imprisonment."*

We believe that the plain language of the Compact indicates that a "term of imprisonment" does not include a term of parole.[5] *See, e.g., State v. Bellino*, 557 A.2d 963, 964 (Me.1989)(a parolee is not a prisoner to whom the time limitations of the Compact apply); *State v. Dunlap*, 57 N.C.App. 175, 290 S.E.2d 744, 746 (1982)(a paroled prisoner is not covered by the Compact); *State v. Foster*, 107 Or.App. 481, 812 P.2d 440, 441 (1991)(when the defendant was released on parole, his "term of imprisonment," within the meaning of the Compact, ended).[6] *But*

923, 927 (Tenn.1976), the trial court may only extend the time limitation set forth in Article III(a) "for good cause shown in open court." Tenn.Code Ann. § 40–31–101. It is unclear from the record whether an extension of the time limitation would have been appropriate.

**5.** We note with interest that in Ga.Code Ann. § 42–9–51 (Harrison 1994)(a statute concerning

procedures for revoking parole), the Georgia legislature distinguishes between a "term of parole or conditional release" and a "term of imprisonment."

**6.** The Oregon court in *Foster* cited *United States v. Roy*, 830 F.2d 628, 633 (7th Cir.1987), in support of its holding. *Id.* In his brief, the appellant attempts to distinguish *Roy*. The court

*see Snyder v. Sumner*, 960 F.2d 1448, 1453–1454 (9th Cir.1992)(the parole status of a prisoner, after he is sent to the receiving state, does not affect the applicability of the Compact).

Accordingly, the appellant has failed to demonstrate that his trial counsel was ineffective pursuant to constitutional guidelines, and we affirm the trial court's denial of post-conviction relief.

JONES, P.J., and WILLIAM M. DENDER, Special Judge, concur.

in *Roy* held that the Interstate Compact on Detainers no longer applied to the defendant in that case following the expiration of his sentence in the sending state. *Roy*, 830 F.2d at 633. The appellant argues that his Georgia sentence did not expire until March 20, 1996. However, the appellant's argument fails to acknowledge the federal court's additional observation that the Compact first became applicable to Roy *when his parole was revoked and he became a prisoner serving a state sentence. Id.* Implicit in this observation is the conclusion that the Compact was *not* applicable to the defendant while he was on parole, prior to the expiration of his sentence.