# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 16, 2014

## STATE OF TENNESSEE v. RICHARD BAREFOOT

**Direct Appeal from the Criminal Court for Sumner County**
**No. 383-2011    Dee David Gay, Judge**

---

**No. M2014-01028-CCA-R3-CD - Filed January 28, 2015**

---

In 2014 the Defendant, Richard Barefoot, pleaded guilty to identity theft, fraudulent use of a credit card, and theft of property. The trial court sentenced him to fifteen years in the Tennessee Department of Correction. The Defendant reserved a certified question of law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2) about whether the trial court improperly denied his motion to dismiss by holding that the time limitation for prisoner transfer as proscribed by the Interstate Compact on Detainers was not applicable. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court in which THOMAS T. WOODALL, P.J., and JOHN EVERETT WILLIAMS, J., joined.

Lawren B. Lassister, Gallatin, Tennessee, for the appellant, Richard Barefoot.

Herbert H. Slatery, III, Attorney General and Reporter; Rachel Willis, Senior Counsel; Lawrence Ray Whitley, District Attorney General; and Thomas Boone Dean, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant fraudulently obtaining credit cards by using multiple victims' information and using those credit cards to purchase goods and services. On May 5, 2011, a Sumner County grand jury indicted the Defendant for eleven counts of identity theft, six counts of fraudulent use of a credit card, two counts of money laundering, and one count of theft over $1,000. The allegations against the Defendant were summarized

in the affidavit in support of probable cause as follows:

> [O]n the 27th of September, 2007, [Officer Shirley Forrest] and Detective Lisa House with the Sumner County Sheriff's Office began investigation into a series of identity theft and credit card fraud cases involving numerous victims in the Goodlettsville and Hendersonville areas. . . . The victims reported that their personal information has been accessed and used to obtain fraudulent credit cards in their names. These credit cards were then used to obtain goods and services, with charges often in excess of $1000.00 and as a high as $25,000.00. Several of the victims reported that U.S. [M]ail had apparently been stolen from their mailboxes . . . and used to facilitate the identity thefts and credit card frauds.
>
> Security video was obtained from several of the stores and banks where the fraudulent transactions occurred, showing the same white male involved in numerous transactions. Through investigation, the white male was eventually identified as [the Defendant]. Major Don Linzy with the Sumner County Sheriff's Office and Agent Kevin Raih with the U.S. Marshal's Service arrested [the Defendant] on 3-18-2008 in Bellevue, Kentucky. [The Defendant] confessed to the crimes of identity theft and credit card fraud and gave written consent to search his premises. The Sony USB stick was located in a black briefcase belonging to [the Defendant]. Anticipated Federal prosecution of [the Defendant] ultimately did not materialize.

Although unclear from the record, it appears that the Defendant was arrested by federal authorities in Kentucky at some point following the Sumner County indictment. On January 11, 2012, the Defendant sent a request pursuant to the Interstate Agreement on Detainers for disposition of his charges in Sumner County. On February 3, 2012, the District Attorney's Office sent a reply letter acknowledging receipt of the Defendant's request on January 23, 2012, and stating that the office intended to acquire custody of the Defendant on February 15, 2012.

The record indicates that the Defendant was removed from the federal facility by the Sumner County District Attorney's Office on February 15, 2012. On May 25, 2012, an official from the Kentucky federal facility notified the Sumner County Jail, where the Defendant was being held, that the Defendant's "federal sentence was satisfied via Full Term Release" and stated that the Defendant, having "completed his federal sentence obligation, should not be returned" to the federal facility in Kentucky.

On June 8, 2012, the Defendant filed a motion to "order the State to comply with their

2

statutory and contractual obligations" pursuant to the Interstate Agreement on Detainers, codified in Tennessee Code Annotated section 40-31-101 et. seq. (2014) (hereinafter "IAD"). In his motion, the Defendant argued that he had "initiated the provisions of the IAD," and, thus, the 180-day time limit was in effect for the disposition of his case, thereby making July 9, 2012, the deadline for a final disposition. The Defendant requested that the trial court "order the State to fulfill the obligations of the [IAD] contract and [] reject the State's contention that the [180] time limit no longer applies in this case." A hearing was held on June 14, 2012, following which the trial court issued an order denying the Defendant's motion and stating that "when the Defendant's federal sentence expired on May 25, 2012, the purpose of the [IAD], as it pertained to the Defendant, ceased and consequently released the State from any obligation imposed by the [IAD]."

On October 23, 2013, the Defendant filed a motion to dismiss the Sumner County indictment, arguing that he had been in the custody of the Sumner County Sheriff's office for 20 months without standing trial in violation of the 180 period proscribed by the IAD. The Defendant cited *State v. Springer*, 406 S.W.3d 526 (Tenn. 2013) in support of his contention that there were "no exceptions" to the IAD, and, thus, the trial court's ruling that the State had been released from compliance with the IAD upon the expiration of the Defendant's federal sentence was error. A hearing was held on October 31, 2013, following which the trial court issued an order denying the Defendant's motion to dismiss. The trial court made the following statement:

> *[State v.] Springer* stands for when a term of imprisonment begins. The issue [in this case] is when does it end. And I think the law was pretty clear in that particular matter.
>
> In this case we're dealing with a 20-count indictment that resulted from a presentment from the grand jury on May 5th, 2011. The [D]efendant was incarcerated in another jurisdiction on January 11, 2012, and asserted his rights on privileges under the IAD statute. From that time . . . the State had 180 days to dispose of the [Defendant's] case. So that would bring it to July 11, 2012.
>
> Now the record reflects . . . that [the Defendant] was brought down here [to Sumner County]. On February 24th [counsel] was appointed, and the case was reset from February 24th to April 19th. Then on April 19th it was reset to May 24th. Then on May 24th it was reset to June 21st, but on June 14th the [Defendant's] motion to order the State to comply with the IAD was heard.
>
> Now, during that period of time the State of Tennessee received a notice from the Department of Justice, [stating that the Defendant's federal

3

sentence has expired.] . . .

Now the [Defendant] has asked me to consider *Springer*. And *Springer*, like I said, kind of determines when [a term of imprisonment] begins. And [the Tennessee Supreme Court] holds . . . "that a term of imprisonment begins when a prisoner has been sentenced and confined, even when the prisoner is serving the sentence in a temporary detention facility or county jail. The plain meaning of term of imprisonment indicates the time period begins when the prisoner is imprisoned after being sentenced. It does not refer to the place of incarceration."

The [Assistant District Attorney] General read this language: "The purpose of the IAD is to encourage the expeditious and orderly disposition of outstanding charges against the prisoner which can produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. It is inconsistent with the purpose to make a distinction between a prisoner's confinement at a local temporary detention center and a state or federal prisoner facility where a prisoner is ultimately assigned."

So then does the purpose [of the IAD] extend to a situation where the person is no longer in custody? That's the question.

The [Tennessee] Supreme Court says: "The IAD provides cooperative procedures for transfers of prisoners between the federal and state jurisdictions that have adopted the [IAD]. . . ."

The trial court also addressed *Womble v. State*, 957 S.W.2d 839 (Tenn. Crim. App. 1997), stating the following:

[A]s far as I can tell, [*Womble*] is directly on point. . . . *Springer* says when [the term of imprisonment] begins; *Womble* says where it ends. The purpose of [the IAD] cannot be complied with if the defendant is no longer in custody in the sending state when he's in the [S]tate of Tennessee.

On February 24, 2014, the Defendant pleaded guilty to eleven counts of identity theft, six counts of fraudulent use of a credit card, and one count of theft of property. The State dismissed the money laundering charges. The trial court sentenced the Defendant to a total effective sentence of fifteen years at 60% as a Career Offender. These judgments were entered on April 30, 2014. By agreed order, the Defendant reserved a certified question of

4

law pursuant to Tennessee Rule of Criminal Procedure 37(b)(2):

> Whether the trial court erred in denying the Defendant's Motion to Dismiss filed on October 23rd, 2013 by holding that the time limitations imposed by the [IAD] are no longer applicable when the sending jurisdiction no longer seeks the return of the Defendant - holding that the *Springer* (2013) case stand[s] for when the IAD "term of imprisonment" begins and that the *Womble* (1997) case stands for when the "term of imprisonment" ends, inasmuch as the Defendant avers that the trial court erred in not adhering to the rulings made by the Supreme Court of the United States in *Bozeman* (2001) and *Gezelman* (2007) and subsequently by the Tennessee Supreme Court in *Springer* therein holding that "the language of the IAD was absolute and militated against an implicit exception, even for *de minimus* exceptions and that Article IV(e)'s dismissal is strictly interpreted; there are no exceptions for *de minimus*, technical, or harmless errors.

The Defendant filed a notice of appeal on May 30, 2014.

## II. Analysis

## A. Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive. The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (alterations in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this Court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This Court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). This Court must make an independent determination that the certified question is dispositive. *Id*. at 135 (citing *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988)).

An appeal lies from any judgment of conviction upon a plea of guilty if the defendant entered into a plea agreement under Rule 11(a)(3) but explicitly reserved with the consent of the State and the court the right to appeal a certified question of law that is dispositive of the case. Tenn. R. Crim. P. 37(b)(2); *see Preston*, 759 S.W.2d at 650. Further, the following

5

are prerequisites for an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> (i) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law reserved by the defendant for appellate review;

> (ii) The question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

> (iii) The judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial judge; and

> (iv) The judgment or document reflects that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv).

In the case under submission, the Defendant's issue on appeal meets these requirements, and we agree that the question is dispositive of the case. Thus, we conclude that the issue is properly before this Court.

### B. Compliance with the Interstate Agreement on Detainers

The Defendant contends that the trial court erred when it ruled that the State was not bound by the 180-day time period in the IAD Act because the Defendant's federal term of imprisonment had expired. Due to the complex nature of the IAD's provisions and, as a result, that of the Defendant's certified question of law, we first describe the IAD before analyzing the Defendant's issue.

The case at bar requires us to interpret the language of the IAD and its statutory construction. This is a question of law which we review de novo with no presumption of correctness. *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013) (citing *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)). The Interstate Agreement on Detainers is a uniform agreement, adopted by forty-eight states including Tennessee, which facilitates the interstate transfer of a prisoner for the purpose of disposing of the prisoner's pending out-of-state criminal charges, which may preclude the prisoner from early release consideration or alternatives to confinement. *See* T.C.A. § 40-31-101, *et seq.* (2014); *Nelms v. State*, 532 S.W.2d 923, 927 (Tenn. 1976). The stated purpose of the IAD is "to encourage the

6

expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." T.C.A. § 40-31-101, art. I. This Court is to construe the provisions of the IAD liberally in favor of the defendants it was intended to protect. *Garmon*, 972 S.W.2d at 710. Its protections, however, are statutory, rather than constitutional or jurisdictional. *Id.* (citing *Grizzell v. Tenn.*, 601 F. Supp. 230 (M.D. Tenn. 1984)).

Describing the interaction of the "sending" state in which a defendant is incarcerated, and the "receiving" state that has lodged a detainer against a defendant, the IAD provides a process whereby the prisoner may demand that the receiving state dispose of charges relating to detainers lodged against the defendant by the receiving state during his temporary transfer to the receiving state. T.C.A. § 40-31-101, art. III(a)-(f). This demand, if carried out according to the procedure set out in the IAD, obliges the receiving state to try the defendant within 180 days or else forfeit prosecution of not only the charges underlying the detainer but also any other charge arising from the same criminal transaction. T.C.A. § 40-31-101, art. III(a); art. V(d). The 180-day period begins to run on the date the petition is received by the court and district attorney in the county where the charges are pending. *State v. Moore*, 774 S.W.2d 590, 593 (Tenn. 1989).

The 180-day period in which the State must try the defendant is not absolute; rather, it is subject to the trial court's ability to grant "any necessary or reasonable continuance" for "good cause shown":

> [Once a person has triggered the [IAD's] protections by causing both the State and the trial court to receive a copy of his [IAD] request,] the person shall be brought to trial within one hundred eighty days, . . . provided, that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

T.C.A. § 40-31-101, art. III(a). Neither a crowded docket nor the State's negligence constitutes "good cause" for a delay. *State v. Gipson*, 670 S.W.2d 637 (Tenn. Crim. App. 1984); *State v. Green*, 680 S.W.2d 474 (Tenn. Crim. App. 1984), *overruled on other grounds by State v. Moore*, 774 S.W.2d 590 (Tenn. 1989). Also, delay "occasioned by the defendant" tolls the running of the 180-day period. *State v. Dillon*, 844 S.W.2d 139, 142 (Tenn. 1992).

The Defendant contends the trial court erred when it held that the IAD no longer applied to the Defendant's case because his Kentucky federal sentence had expired. He contends that he was serving a federal prison sentence at the time he requested disposition of his Sumner County charges pursuant to the IAD, and as such, the timeliness requirement

7

in the IAD "unquestionably" applied to his term of imprisonment based on the strict language of the statute. The State responds that, because the Defendant's federal prison sentence expired while he was being detained in Sumner County, and prior to the 180-day deadline, the IAD no longer applied and the State was not bound by the limits therein.

The narrow issue in this case of the applicability of the IAD to a defendant who is no longer serving a "term of imprisonment" in the "sending state" has not been discussed extensively in Tennessee case law. Thus, we have reviewed the law of other jurisdictions. In *Commonwealth v. Destephano*, 2014 Pa. Super. 46, 87 A.3d 361, 364 (2014), the Pennsylvania Superior Court held that the IAD "explicitly" "applies to anyone against whom a detainer has been lodged in a party state who is serving a term of imprisonment." *Id.* at 365. The court, citing case law from four other jurisdictions, held that "the plain language of the IAD and the policy considerations underlying the statute militate in favor of a finding that its terms no longer apply once a prisoner has been discharged from his sentence in the sending state." *Id.* at 367 (citing *Pristavec v. State*, 496 A.2d 1036 (Del. 1985); *State v. Oxendine*, 58 Md. App. 591, 473 A.2d 1311 (1984); *State v. Thompson*, 19 Ohio App.3d 261, 483 N.E.2d 1207 (1984); *State v. Dunlap*, 57 N.C. App. 175, 290 S.E.2d 744 (1982)).

In *State v. Butler*, the defendant, serving a term of imprisonment in Ohio, requested disposition of his charges in Florida. While awaiting trial in Florida, the defendant's Ohio prison sentence expired within the 180-day period. 496 So.2d 916, 916-17 (Fla. 1986). The appeals court, citing *Dunlap*, addressed the issue of whether the defendant's trial, held after the 180-day period, was a violation of the speedy trial protections of the IAD. The court stated that "[t]he purpose of the [IAD] is to 'obviate difficulties in securing speedy trials of persons incarcerated in other jurisdictions and to minimize the time during which there is an inherent danger that a prisoner may forego preferred treatment or rehabilitation benefits.'" *Id.* at 917. The court went on to say that "[a]ll of those consequences of detainers, however, expire when the prisoner is no longer incarcerated. At that point the IAD - and its attendant speedy trial element - is no longer applicable." *Id.* Citing *Pristavec* and *Oxendine*, the court held that the IAD is "no longer applicable when the prisoner is released from prison in the sending state or county." *Id.*

The State cites *Womble v. State*, 957 S.W.2d 839 (Tenn. Crim. App. 1997) in support of its argument that the IAD no longer applied to the Defendant's case when his federal sentence in Kentucky expired. In *Womble*, the defendant was serving a prison sentence in Georgia when he was indicted in Hamilton County, Tennessee. The defendant signed a request for disposition of the Tennessee charge. The defendant was transferred from Georgia to Tennessee. 957 S.W.2d at 841-42. Subsequently, the Georgia Department of Corrections sent a "Certificate of Conditional Transfer" to the Hamilton County District Attorney stating that the defendant was not to be returned to the Georgia Department of Corrections upon

8

completion of his sentence in Tennessee and "granted the [defendant] 'an outright parole.'" *Id.* at 842.

In post-conviction proceedings, the defendant in *Womble* contended that his trial was not held within the proscribed 180 days from the time Georgia authorities released him to Tennessee authorities. This Court, noting that the defendant was on parole in Georgia, concluded that the protections of the IAD "[do] not extend to a defendant who has been placed on parole in the sending state." *Id.* at 843. We held that the language "term of imprisonment" in the IAD did not include a term of parole. *Id.*

We believe that the reasoning in *Womble* is applicable here. Although the Defendant in this matter was not on parole, the same principle applies because he was no longer serving a term of imprisonment in Kentucky. When federal authorities in Kentucky notified the Sumner County District Attorney on May 25, 2012, that the Defendant's sentence had expired, the purpose of the IAD, to expedite the disposition of his charges in Tennessee, the receiving state, was no longer necessary. Because his federal sentence in Kentucky had expired, any subsequent delays in the case in Tennessee, of which there were several, could not have affected early release or rehabilitative alternatives regarding his prison sentence in Kentucky. Thus, any time period contemplated by the IAD as to the disposition of his Tennessee charges became irrelevant. Accordingly, we conclude that when the Defendant's federal sentence in Kentucky expired on May 25, 2012, which was within the 180-day IAD deadline, the IAD became inapplicable to the Defendant's case and that trial court did not err when it denied the Defendant's motion to dismiss on that basis.

### III. Conclusion

Having thoroughly reviewed the record and relevant authorities, we conclude that the trial court did not err when it denied the Defendant's motion to dismiss. As such, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

9