IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
October 25, 2005 Session

## STATE OF TENNESSEE v. KENNETH DEANGELO THOMAS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2002-A-446     Seth Norman, Judge**

---

**No. M2004-03069-CCA-R3-CD - Filed March 3, 2006**

---

A Davidson County jury convicted the Defendant of felony murder. The Defendant appeals as of right from his conviction and contends that the indictment against him should be dismissed with prejudice due to a violation of Article IV of the Interstate Agreement on Detainers. Finding no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JJ., joined.

Jeffrey O. Powell, Nashville, Tennessee (on appeal) and Leann Smith, Nashville, Tennessee (at trial), for the Appellant, Kenneth Deangelo Thomas.

Paul G. Summers, Attorney General and Reporter; Rachal E. Willis, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Lisa Naylor and Dan Hamm, Assistant District Attorney Generals, for the Appellee, State of Tennessee.

**OPINION**
**I. Procedural History**

On January 4, 2002, the Defendant was convicted of five counts of aiding and abetting bank fraud and was sentenced to serve thirty-two months in a Federal penitentiary in Kentucky. On March 8, 2002, the Defendant was indicted by a Davidson County, Tennessee Grand Jury for the murder of Andrew Lewis Titus during the perpetration of a robbery on January 31, 1999 (case number 2002-A-446) and, on March 12, 2002, the State of Tennessee charged the Defendant with the felony murder of Titus in a sealed indictment. On May 31, 2002, Victor (Torry) S. Johnson, III, District Attorney for Davidson County, Tennessee, sent a letter to the detention center in Kentucky where the Defendant was incarcerated. The letter referenced "the attached documents as a detainer

pursuant to the Interstate Agreement on Detainers" in case number 2002-A-446, under which the Defendant was charged with felony murder. On August 27, 2002, a writ of habeas corpus ad prosequendum was filed by Assistant District Attorney Lisa Naylor, and signed by Judge Steve Dozier, Criminal Court Judge of Davidson County, Division I, requesting the Defendant's presence for court and temporary custody by the Davidson County Sheriff's Department. The writ of habeas corpus ad prosequendum makes reference to the office of the United States Attorney, Middle District of Tennessee as having agreed to honor the writ, and states that the Defendant "has Federal proceedings on the day his presence is required in State court." On or about August 29, 2002, pursuant to the writ, the Defendant was transported to the Criminal Justice Center in Nashville, Tennessee, and was arraigned there on August 29, 2002. The record does not indicate where the Defendant was next transported, but the terms of the writ of habeas corpus ad prosequendum indicate that the Defendant was to be immediately returned to the custody of the U.S. Marshall. On October 13, 2003, the Defendant was tried in case number 2002-A-446 by a jury in Davidson County, Tennessee, and on October 16, 2003, he was convicted of felony murder and sentenced to life in prison. On November 19, 2003, the Defendant filed an untimely motion for new trial. That motion was heard and overruled on December 3, 2004. An untimely notice of appeal was filed on December 14, 2004.

The technical record indicates that the Defendant was present in person in the Davidson County, Tennessee Criminal Court on August 29, 2002. The trial court appointed LeAnn Smith to represent the Defendant, the Defendant was arraigned, and the Defendant pled not guilty. The case was continued to September 19, 2002. We cannot ascertain from the record in this case if the September 19, 2002, court date was intended as a trial date, but we believe a trial date 21 days after arraignment in a first degree murder case would be highly unlikely. The next pleading contained in the technical record is a motion to continue a trial date set for July 14, 2003. The motion states that the case was set for trial "many months back." The motion appears to have been filed June 23, 2003, which would indicate that the trial date of July 14, 2003, had been set "many months" prior to June 23, 2003. Attached to the motion for continuance is a copy of an ex parte motion for investigative assistance funds that was filed by defense counsel on April 10, 2003. In its response to the Defendant's motion for new trial, the State asserts that the case was "initially set to go to trial on April 31 [sic], 2003," and was continued until July 14, 2003, and subsequently until October 13, 2003, at the request of defense counsel. We cannot ascertain from the record when the "April 31 [sic], 2003" trial date was set and whether other trial dates were continued at the request of the State or the Defendant. The record reflects that at 8:26 a.m. on October 13, 2003, the day of his trial, the Defendant filed a Motion to Dismiss requesting that his indictments be dismissed due to violations of Article IV(c) of the IAD.

## II. Analysis

On appeal, the Defendant contends that the indictment against him should be dismissed with prejudice because the State failed to bring him to trial within 120 days of his arrival in Tennessee, in violation of Article IV of the Interstate Agreement on Detainers ("IAD"). We disagree.

## A. Timeliness of Motion for New Trial and Notice of Appeal

The State argues that the Defendant filed an untimely motion for new trial and that because the motion for new trial was not timely filed, the motion did not toll the 30-day period in which the Defendant should have filed his notice of appeal under Tennessee Rule of Appellate Procedure 4. Therefore, the State asserts, the Defendant filed an untimely notice of appeal, and the Defendant's appeal should be dismissed.

The Defendant contends that he had a contentious relationship with his former counsel and that she failed to timely file a motion for new trial in retaliation for his complaints about her representation. The Defendant also contends that his former counsel's failure to timely file a motion for new trial reflects her pattern of poor representation. The Defendant asserts that he mistakenly relied on the filing of the motion for new trial to toll the running of the time requirement of Tennessee Rule of Appellate Procedure 4. The Defendant asserts that, in the interest of justice, this Court should waive the time requirement of Tennessee Rule of Appellate Procedure 4(a).

A motion for new trial "shall be made . . . within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). "Unlike the untimely filing of the notice of appeal, this Court does not have the authority to waive the untimely filing of a motion for new trial." See Tenn. R. App. P. 4(a); State v. Patterson, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997). If a motion for a new trial is legally invalid, the only issues that are reviewable are those that were not required to be listed in a motion for a new trial. See Tenn. R. App. P. 3(e); State v. Durham, 614 S.W.2d 815, 816 n.1 (Tenn. Crim. App. 1981). Issues that fall into this category are those that go to questions that could bring about an outright dismissal of a defendant's conviction. State v. Williams, 675 S.W.2d 499, 501 (Tenn. Crim. App. 1984); State v. Davis, 748 S.W.2d 206 (Tenn. Crim. App. 1987). Accordingly, this Court can consider the Defendant's argument regarding the IAD violation because this issue could result in the dismissal of the prosecution against him. Id.

Pursuant to Tennessee Rule of Appellate Procedure 4(a), a notice of appeal shall be filed within thirty days after the date of entry of the judgment being appealed. Tenn. R. App. P. 4. However, in all criminal cases, the notice of appeal is not jurisdictional and may be waived "in the interest of justice." State v. Davis, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). In the interest of justice, this Court waives the time requirement of Tennessee Rule of Appellate Procedure 4(a) and we will address the IAD issue on the merits.

## B. Interstate Agreement on Detainers ("IAD")

The IAD is designed to "encourage the expeditious and orderly disposition of . . . charges outstanding against a prisoner and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." Tenn. Code Ann. § 40-31-101, Art. I (2003). Provisions of the IAD are to be construed liberally in favor of the prisoners it was intended to benefit. State v. Garmon, 972 S.W.2d 706, 710 (1998). Federal law governs the interpretation of the IAD. Id. at 711.

## 1. Filing a Detainer

In order to determine whether the provisions of the IAD apply to this case, we must first decide whether the Defendant was brought to the Criminal Justice Center in Nashville, Tennessee pursuant to the IAD or a writ of habeas corpus ad prosequendum. The State contends that the provisions of the IAD should not apply to the case under submission because the Defendant was brought to Tennessee pursuant to a writ of habeas corpus ad prosequendum and not pursuant to the IAD. The Defendant argues that because the writ of habeas corpus ad prosequendum was filed after the detainer was lodged, the provisions of the IAD still apply to the charges against him. We agree with the State.

The provisions of the IAD can be "triggered" when a detainer is filed with the custodial or sending state by another state which has untried charges pending against the prisoner. State v. Brown, 53 S.W.3d 264, 284-85 (Tenn. Crim. App. 2000). "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." Id. At 85. A writ of habeas corpus ad prosequendum, "directing the production of a . . . prisoner for trial on criminal charges, is not a detainer within the meaning of the Agreement and thus does not trigger the application of the Agreement." United States v. Mauro, 436 U.S. 340, 349 (1978).

## 2. Speedy Trial Provisions of the IAD

The Defendant argues that the State violated Article IV(c) of the IAD by failing to bring him to trial within 120 days of his arrival in Tennessee from Federal custody. The State asserts that the IAD is not applicable in this case, or that if the IAD is applicable, the Defendant waived his rights to a speedy trial granted by the IAD because he failed to notify the court that trial date was set beyond the time limit allowed by Article IV(c).

Article III and Article IV address the ways that a defendant's right to a speedy trial arises under the IAD. In Alabama v. Bozeman, 533 U.S. 146, 150 (2001), the Supreme Court of the United States explained that:

> Article III gives a prisoner against whom a detainer has been lodged the right to "request" a "final disposition" of the relevant charges, in which case "he shall be brought to trial within one hundred and eighty days;" . . . . Article IV gives "the jurisdiction in which an untried indictment, information, or complaint is pending," i.e., the receiving [s]tate, the right "to have a prisoner against whom" it "has lodged a detainer . . . made available" for trial.

Id.

If a prosecution is proceeding under Article IV, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state subject to the continuances for "good cause shown

-4-

in open court." See Article IV. The record before us does not indicate, subsequent to the Davidson County D.A.'s May 31, 2002 letter and documents sent to the detention center in Kentucky[1], that either the Defendant or the State proceeded further under the provisions of the IAD. In our view, the speedy trial provisions of the IAD are "triggered" when, after a detainer is lodged, either the Defendant pursuant to Article III or the State pursuant to Article IV request that further proceedings occur. There is nothing in the record to indicate that upon the lodging of the detainer, the Defendant requested a final disposition of the felony murder charges in the case 2002-A-446. Nor is there any indication in the record that the State presented a "written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated," as set out in Article IV of the IAD. Article IV also mandates a period of thirty (30) days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request.

The record is void of any utilization of the IAD by either the Defendant or the State, other than the May 31, 2002 letter from the Davidson County District Attorney General to the detention center in Kentucky. Rather than the record revealing that either party proceeded under the IAD, our careful review of the record indicates that the custody of the Defendant was obtained from the U.S. Marshall in Tennessee by the Davidson County Sheriff's department on August 29, 2002, pursuant to a writ of habeas corpus ad prosequendum, with custody of the Defendant to be returned to the U.S. Marshall by 5:00 p.m. on August 29, 2002. Although the Defendant claims that he remained in the custody of Davidson County, Tennessee authorities from August 29, 2002, until his trial on October 13, 2003, that claim is contrary to the terms of the writ of habeas corpus prosequendum.

Because we have concluded that neither the Defendant or the State "triggered" the speedy trial provisions of the IAD, the Defendant's claim that the indictment must be dismissed is without merit. Because we agree with the State's assertion that the IAD is not applicable in this case, it is not necessary to address the State's assertion at oral argument that the Defendant waived his rights under the IAD.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, the judgement of the trial court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[1] For purposes of this appeal, we conclude that this letter and attached documents was a "detainer" for IAD purposes.