IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

NOVEMBER 1997 SESSION

FILED

January 12, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9611-CR-00437 |
| Appellee, | * | SHELBY COUNTY |
| VS. | * | Hon. James C. Beasley, Jr., Judge |
| MYRON GARMON, | * | (Aggravated Sexual Battery) |
| Appellant. | * | |

For Appellant:

Tony N. Brayton
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103
(on appeal)

Leslie Mozingo
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103
(at trial)

Of Counsel:

A.C. Wharton
Shelby County Public Defender

For Appellee:

John Knox Walkup
Attorney General and Reporter

Timothy F. Behan
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

David Henry
Assistant District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN 38103

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

The defendant, Myron Garmon, was convicted of one count of aggravated sexual battery. The trial court imposed a twelve-year sentence to be served consecutively to sentences imposed in the State of Arkansas. In this appeal of right, the defendant claims that the evidence was insufficient to corroborate his confession; he also argues that the trial court should have sustained the defendant's motion to dismiss for the state's failure to try the case within one-hundred-eighty days from his request for trial.

We affirm the judgment of the trial court.

In June of 1994, the defendant, a resident of Jonesboro, Arkansas, took his two sons and the six-year-old female victim to Libertyland in Memphis. During the visit, the defendant touched the vaginal area of the victim. On June 27, 1994, at the Methodist Hospital in Jonesboro, a medical examination revealed no signs of trauma to the victim.

The victim, who was wearing a dress at the time, recalled riding a horse on the merry-go-round when she received a "bad touch" from the person entrusted to care for her. She used a diagram to point out that she had been touched in the vaginal area. The victim could not remember, however, who had touched her. Lieutenant B.J. Smith of the Jonesboro Police Department in Arkansas questioned the defendant on January 20, 1995, several months after the incident. The defendant identified the victim only as Brandy and recalled that her mother had been killed in a car wreck. He acknowledged that Brandy lived in Arkansas but that the incident had occurred in Memphis. The defendant confessed to police that he attempted to fondle the victim but quit when she objected.

2

According to Lieutenant Smith, the defendant explained that "my desires got the best of me."

At trial, the victim's father, Darrell Parker, acknowledged that the victim's mother had been killed in a car accident between the time of the offense and the interrogation of the defendant by the police.

There was only one defense witness called to testify. The defendant's son, James Garmon, an eighth grader, recalled the trip to Libertyland with his older brother Joe, the young victim, and the defendant. James could not recall a time during the entire day that the defendant was alone with the victim. On cross-examination, however, the witness did acknowledge that there were times during the course of the day when he was outside of the view of the victim.

I

The defendant claims that the state was unable to offer enough evidence to prove that a crime had been committed. He argues that no witness linked the defendant with the victim, that the hospital records did not substantiate any unlawful touching, and that the victim was unable to identify her assailant.

The corpus delicti of a crime requires a showing that (1) a certain result has been produced, and (2) the result was created through a criminal agency. Ashby v. State, 139 S.W. 872 (Tenn. 1911); State v. Ervin, 731 S.W.2d 70 (Tenn. Crim. App. 1986). Whether the state has sufficiently established the corpus delicti is primarily a jury question. Williams v. State, 552 S.W.2d 772 (Tenn. Crim. App. 1977). All elements of the corpus delicti may be established by circumstantial evidence. Clancy v. State, 521 S.W.2d 780 (Tenn. 1975). Only slight evidence of

3

the corpus delicti is necessary to corroborate a confession and thus sustain a conviction. Ricketts v. State, 241 S.W.2d 604 (Tenn. 1951). Corroborative findings made in the course of the investigation in addition to the confession may be sufficient to support the conviction. Ervin, 731 S.W.2d at 72.

In our view, the state met its burden of proof as to the corpus delicti. See State v. Wayne Dillard Carver, No. 1152 (Tenn. Crim. App., at Knoxville, Aug. 1, 1988). This crime occurred in the summer of 1994 when the victim was six years old. Witnesses were able to establish that the defendant had taken his two sons and the victim to a theme park in Memphis during that time. There was a merry-go-round in the theme park. While the victim could not identify her assailant, the defendant acknowledged having fondled a young girl from Jonesboro, Tennessee, whose first name matched that of the victim. The state was able to corroborate the identity of the victim and the defendant by establishing that the victim's mother had been killed in a car accident during the fall of 1994, a fact that the defendant had acknowledged in his police interview. "A confession may sustain a conviction where there is other evidence sufficient to show the commission of the crime by someone." Taylor v. State, 479 S.W.2d 659, 661-62 (Tenn. Crim. App. 1972). Here, the victim's testimony that she received a "bad touch," coupled with all of the other evidence, is sufficient corroboration of the defendant's confession. Id. The corroborative evidence necessary to support the corpus delicti need not be sufficient in and of itself but only support "the essential facts ... to justify a jury inference of their truth." Opper v. United States, 348 U.S. 84, 93 (1954). The state has satisfied that standard.

II

The defendant next complains that on October 2, 1995, he filed a

4

request for trial under Tenn. Code Ann. § 40-31-101, the Interstate Compact on Detainers. The request was received by the authorities in Shelby County on either October 7 or 17.[1] A trial was set on March 11, 1996, but was continued because the state desired to amend its notice of intent to seek an enhanced punishment and provide notice of prior convictions to be utilized for impeachment purposes. See Tenn. Code Ann. § 40-35-202(a)[2] and Rule 609(a)(3),[3] Tenn. R. Evid. The trial was rescheduled for April 15, 1996, some 196 days after the defendant signed a document requesting a trial in accordance with the terms of the compact. The defendant argues that the delay beyond one hundred eighty days was neither necessary nor reasonable and that the trial court erred by refusing to enter an order of dismissal.

The state insists that there is nothing in the record other than the assertions of defense counsel to indicate that the defendant made a request for trial on October 2, 1995. It claims that the failure on the part of the defendant to include

---

[1] The record contains conflicting information about when the state received the request.

[2] **Notice of intent to seek enhanced punishment--Statement of enhancement and mitigating factors.--**(a) If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea; provided, that notice may be waived by the defendant in writing with the consent of the district attorney general and the court accepting the plea. Such statement, which shall not be made known to the jury determining the guilt or innocence of the defendant on the primary offense, must set forth the nature of the prior felony convictions, the dates of the convictions and the identity of the courts of the convictions. The original or certified copy of the court record of any prior felony conviction, bearing the same name as that by which the defendant is charged in the primary offense, is prima facie evidence that the defendant named therein is the same as the defendant before the court, and is prima facie evidence of the facts set out therein.

[3] (a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:

*  *  *

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

adequate information on this issue served as a waiver for appellate purposes. See Rule 24(b), Tenn. R. App. P.; State v. Draper, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990). The assistant district attorney general, while acknowledging that the request for a trial was dated October 2, asserted that the request was not received until October 17, 1995.

The trial court pointed out that regardless of the date utilized to measure the one hundred eighty days, all Shelby County courts were closed on April 5, 1996, a state holiday, and the entire week beginning Monday, April 8 for the spring session of the Tennessee Judicial Conference. The trial began on the following Monday. While implying that the delay was necessary, the trial judge ruled that the one hundred eighty days was mainly a guideline and that the state had acted in good faith in attempting to set a trial as early as possible.

The primary purpose of the Interstate Compact is to provide an expedient, orderly disposition of the out-of-state charge upon which a detainer is based. Dillon v. State, 844 S.W.2d 139 (Tenn. 1992). The compact seeks to ensure that detainers are filed only when substantial grounds exist for bringing the prisoner to trial in another jurisdiction. State v. Hill, 875 S.W.2d 278 (Tenn. Crim. App. 1993). The compact procedure results in only a temporary transfer to the receiving state. State ex rel. Young v. Rose, 670 S.W.2d 238 (Tenn. Crim. App. 1984).

The provisions of the Interstate Compact on Detainers are to be construed liberally in favor of prisoners it was intended to benefit. State v. Gipson, 670 S.W.2d 637 (Tenn. Crim. App. 1984). The provisions of the compact are, however, statutory rights, not fundamental, constitutional, or jurisdictional. Grizzell

6

v. Tennessee, 601 F. Supp. 230 (M.D. Tenn. 1984). Failure to comply with the one-hundred-eighty-day time limit does not automatically require a dismissal of the indictment if a continuance beyond that period is necessary or reasonable. Gipson, 670 S.W.2d at 639. This court has held that a crowded docket was not a necessary or reasonable ground for continuance and set aside the indictment. Id. Negligence on the part of the state does not constitute good cause for delay. See State v. Green, 680 S.W.2d 474 (Tenn. Crim. App. 1984), overruled on other grounds, State v. Moore, 774 S.W.2d 590 (Tenn. 1989). A continuance granted ex parte has no tolling effect. Dillon, 844 S.W.2d at 142.

> The compact between the states provides in part as follows:
>
> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the person shall be brought to trial within one hundred eighty days after having caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction, written notice of the place of the person's imprisonment and request for a final disposition to be made of the indictment, information or complaint; provided, that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Tenn. Code Ann. § 40-31-101, art. III (a) (emphasis added).

By our calculations, the one hundred eighty days would have expired by March 30, 1996, if the time is calculated from the defendant's claimed date of his request for trial. The plain terms of the compact, however, require a trial within "one hundred eighty days after having caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the

7

person's imprisonment and request for a final disposition...." Our supreme court has held that the one-hundred-eighty day period does not begin to run until the state and the court have received the petition. State v. Moore, 774 S.W.2d 590, 593 (Tenn. 1989).

The record suggests the state received the petition on either October 7, 1995, or October 17, 1995. Regardless of which day the state received the petition, the defendant is not entitled to relief.

If the petition was received on October 17, 1995, the trial should have begun on April 14, 1996, in order to comply with the one hundred eighty-day limitation. Because, however, April 14 was a Sunday, and the trial was commenced on Monday, April 15, the rule was not violated. In United States v. Johnson, 953 F.2d 1167 (9th Cir. 1992), the state argued that because the one-hundred-eightieth day fell on a Sunday, the Federal Rules of Criminal Procedure allowed for timely commencement of the trial on Monday. The Ninth Circuit agreed: "States party to the Interstate Detainers Act have used local time computing provisions analogous to Fed. R. Crim. P. 45(a) to extend the 180 day limit when the 180th day is a Saturday, Sunday, or legal holiday." Id. at 1172 (footnote omitted). Accordingly, we look to Tenn. R. Crim. P. 45(a) for guidance:

> Time.--(a) Computation.--In computing any period of time
> the day of the act or event from which the designated
> period of time begins to run shall not be included. The
> last day of the period so computed shall be included
> unless it is a Saturday, Sunday, or a legal holiday, ... in
> which event the period runs until the end of the next day
> which is not a Saturday, a Sunday, or a legal holiday ....

Even if the state had received the petition ten days earlier, the defendant could not prevail. A failure to object to the date for a trial set beyond the

8

one-hundred-eighty-day period precluded an application for discharge under the compact. State v. Suarez, 681 S.W.2d 584 (Tenn. Crim. App. 1984), overruled on other grounds, State v. Moore, 774 S.W.2d 590 (Tenn. 1989).[4] In Suarez, the defendant raised the issue for the first time on direct appeal of his armed robbery convictions. The court rejected his claim:

> [W]e hold that the defendant's failure to object to the trial date at the time it was set or during the remainder of the 180-day period resulted in waiver of his rights under Article III of the Interstate Compact on Detainers.

Suarez, 681 S.W.2d at 586. Here, defense counsel from all appearances agreed to reschedule the trial and did not mention the violation of the Interstate Compact on Detainers until after the time for compliance had passed. That would constitute a waiver. Id. Federal law governs the interpretation of the Interstate Compact on Detainers Act. Cuyler v. Adams, 449 U.S. 433 (1981). The federal courts have held that rights under the compact can be waived. Kowalak v. United States, 645 F.2d 534 (6th Cir. 1981). See also Brown v. Wolfe, 706 F.2d 902, 903-04 (9th Cir. 1983).

Moreover, it would appear that the trial had been set for March 11, 1996, well within the one-hundred eighty-day period and was continued for good and necessary reasons, much to the benefit of the defendant, when the state filed its March 6, 1996, notice of intent to seek enhanced punishment and utilize prior convictions for impeachment purposes. That there was no criminal court in Shelby County from April 5 through April 14, 1996, indicates a good faith effort on all involved to meet the primary purpose of the compact; that is, to provide an expedient, orderly disposition of state charges outside of Arkansas.

---

[4]In Suarez, the court stated the "180-day 'statute of limitations' is triggered when the inmate delivers his request ... to his captors." 681 S.W.2d at 586. That portion of Suarez was overruled in Moore, where the court ruled that the time period did not commence until "the date on which Tennessee received notice ...." 774 S.W.2d at 593. The portion of Suarez discussing waiver, however, is still the law today.

In pretrial argument, defense counsel acknowledged that the continuance, due to an amended notice to include a 1973 Kansas conviction, ultimately benefitted the defendant. It allowed her time to determine that the conviction had been overturned on appeal and thus limit the sentence to a Range I. Defense counsel made this further comment:

> I am obligated, of course, to present all the law that I feel is against my position, and that because of ... necessary delays--the fact that there were no courts open last week--the Friday before that was a holiday--and that all the delays--all the continuances, with the exception of from March 11 until today was based on the state; that it appears from my reading of the law that we are still within our one hundred eighty days.

(Emphasis added). The defense then conceded that it had sought a delay from January 9 through February 1, 1996. The speedy trial provisions of the Act are tolled by delay "occasioned by the defendant." Dillon, 844 S.W.2d at 142 (citations omitted). Typically, delays at the hands of the defendant would fall into the category of reasonable and necessary. See State v. Tyson, 603 S.W.2d 748 (Tenn. Crim. App. 1980); Dillon, 844 S.W.2d at 142.

We hold that the record is inadequate for us to determine that the time began to run before October 17, 1995; if it did, the trial was timely commenced. It is the obligation of the appellant to provide an adequate record for the disposition of an issue on appeal. Tenn. R. App. P. 24(b). In this instance, we cannot accurately assess the number of days without further documentation from the trial court as to when the request was received. Had the notice been received on October 7, 1995, we would have nevertheless concluded that the continuance of the trial from the March 11, 1996, setting was reasonable and necessary and much to the benefit of the defendant. Certainly, the purposes of the compact were not abridged by the developments in this case.

Accordingly, the judgment is affirmed.

_____

Gary R. Wade, Judge

CONCUR:


_____

David G. Hayes, Judge


_____

Joe G. Riley, Judge