# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### July 1, 2008 Session

## STATE OF TENNESSEE v. BRIAN DAVIDSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-02122      Chris Craft, Judge**

---

**No. W2007-00294-CCA-R3-CD  - Filed September 9, 2008**

---

The defendant, Brian Davidson, was convicted by a Shelby County Criminal Court jury of one count of manufacturing methamphetamine, two counts of possession of methamphetamine with the intent to sell and/or deliver, one count of possession of anhydrous ammonia, one count of possession of marijuana, two counts of possession of Hydrocodone, and two counts of possession of Alprazolam. After merging the manufacturing and possession of methamphetamine convictions, the possession of Hydrocodone convictions, and the possession of Alprazolam convictions, the trial court sentenced the defendant to five years for manufacturing methamphetamine, eighteen months for possession of anhydrous ammonia, and eleven months, twenty-nine days for each of the convictions for possession of Hydrocodone, Alprazolam, and marijuana, with the sentences to be served concurrently to each other but consecutively to the defendant's sentences in a federal case. The defendant argues on appeal that the trial court erred in denying his motion to dismiss based upon a violation of the speedy trial provision of the Interstate Compact on Detainers, in denying his motion to suppress a detective's in-court identification of him, in denying his discovery request for the impeaching convictions of his codefendant, and in ordering that he serve his sentences consecutively to his federal sentences. Having reviewed the record and found no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J.C. MCLIN, JJ., joined.

Ryan B. Feeney, Selmer, Tennessee, for the appellant, Brian Davidson.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Alanda H. Dwyer and Chris West, Assistant District Attorneys General, for the appellee, State of Tennessee.

# OPINION

## FACTS

On August 22, 2003, a patrol officer with the Shelby County Sheriff's Department notified Narcotics Division Detective James Masters of his discovery of a possible methamphetamine laboratory located in rural northern Shelby County. After determining that the site was, in fact, an old methamphetamine laboratory, Detective Masters and fellow narcotics officers contacted the land owner, who gave them permission to check periodically for criminal activity on the property, which consisted of approximately five mostly wooded acres with a small field or grassy opening on top of a ridge.

When the officers returned to the property at noon on August 29, 2003, they discovered a refrigerator lying on its back in the field. Inside the refrigerator, they found components used in the manufacture of methamphetamine, including Red Devil lye, ammonia nitrate, lithium batteries, and various plastic vessels, tubing, and funnels. Because these materials suggested "[t]hat someone was preparing to cook methamphetamine," they left the scene as they found it but returned later that evening to do a "still watch." Upon their return at approximately 7:30 p.m., they first detected the distinct odor of anhydrous ammonia, associated with the manufacture of methamphetamine, and then, upon reaching the tree line, observed two men in the field opening bags of ammonia nitrate. Two older model Chevrolet pickup trucks were parked nearby.

The officers remained undetected at the tree line, fifty yards from the suspects, for approximately thirty minutes while Detective Masters used binoculars to watch the men's activity and observe their facial features. When one of the suspects, later identified as Sterritt Walker, got into his vehicle and started its engine, the officers emerged from the woods and announced their presence. Instead of stopping, Walker first accelerated toward the officers and then turned and drove at a high rate of speed in the opposite direction. When his vehicle became stuck on the ridge, he exited and ran toward the woods, yelling, "[T]hey're on to us, the police are on to us." Two of the detectives chased and captured Walker while Detective Masters and another detective ran up the ridge to the spot where the second man had been working. However, by the time they arrived, he was gone.

The second vehicle, a 1972 Chevrolet truck, contained methamphetamine components, various prescription drugs, and several documents, including a letter from "Mom" addressed to the defendant, traffic tickets in the defendant's name, and the vehicle's certificate of title, which indicated that the defendant was the owner of the vehicle. When the officers asked Walker if he knew the defendant, he replied that he was the man with whom he had been cooking methamphetamine. A few hours later, Detective Masters ran the defendant's name through his computer and obtained his photograph, from which he confirmed that he was the second man he had observed working in the methamphetamine laboratory that evening.

The defendant was subsequently charged in a nine-count indictment with one count of manufacturing methamphetamine, two counts of possession of methamphetamine with the intent to sell and/or deliver, one count of possession of anhydrous ammonia, two counts of possession of

Hydrocodone with the intent to sell and/or deliver, two counts of possession of Alprazolam with the intent to sell and/or deliver, and one count of possession of marijuana. Walker, who was indicted with the defendant for the methamphetamine-related offenses, entered guilty pleas in connection with the offenses in October 2004 and testified against the defendant at his November 13-16, 2006 trial. Following deliberations, the jury convicted the defendant of the methamphetamine-related offenses and of the marijuana offense as charged in the indictment and of the lesser-included offenses of simple possession of Hydrocodone and simple possession of Alprazolam.

## ANALYSIS

### I. Interstate Compact on Detainers Act

As his first issue, the defendant contends that the trial court erred in not dismissing the indictment based on the State's failure to bring him to trial within 180 days of when it received his petition for final disposition of the case, in violation of the Interstate Compact on Detainers Act ("the ICD"). He asserts that the trial court and the district attorney received his petition on March 20, 2006, and that the time period was tolled for only fifty-one days based on continuances he requested, which meant that 187 days had elapsed prior to the start of his trial.

The State first argues that the defendant has waived the issue by his failure to provide an adequate record for appellate review. The State notes that there is nothing in the record other than the assertions of defense counsel to indicate that March 20, 2006, is the date on which the trial court and the district attorney received the defendant's request for trial and that it is unclear from the record how much of the delay in bringing the case to trial was occasioned by the defendant. The State further argues that even if the March 20, 2006, date is correct, the defendant waived his rights under the ICD by his failure to object to the November 13, 2006, trial date at the time it was proposed by the trial court.

The ICD is codified at Tennessee Code Annotated section 40-31-101 *et seq.* Article III, subsection (a) provides in pertinent part:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the person shall be brought to trial within one hundred eighty (180) days after having caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the person's imprisonment and request for a final disposition to be made of the indictment, information or complaint; provided, that for good cause shown in open court, the prisoner or prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Tenn. Code Ann. § 40-31-101, art. III(a) (2006). "The primary purpose of the Interstate Compact is to provide an expedient, orderly disposition of the out-of-state charge upon which a detainer is

based." State v. Garmon, 972 S.W.2d 706, 709 (Tenn. Crim. App. 1998) (citing Dillon v. State, 844 S.W.2d 139, 141 (Tenn. 1992)). Its provisions are to be construed liberally in favor of the prisoner. Dillon, 844 S.W.2d at 141. Those provisions, however, involve statutory rights as opposed to fundamental, constitutional, or jurisdictional rights. Garmon, 972 S.W.2d at 710 (citing Grizzell v. Tennessee, 601 F. Supp. 230, 231 (M.D. Tenn. 1984)). "Failure to comply with the one-hundred-eighty-day time limit does not automatically require a dismissal of the indictment if a continuance beyond that period is necessary or reasonable." Id. (citing State v. Gipson, 670 S.W.2d 637, 639 (Tenn. Crim. App. 1984)). The speedy trial provisions of the Act are tolled by delay "occasioned by the defendant." Dillon, 844 S.W.2d at 142 (citations omitted). Negligence on the part of the State does not constitute good cause for a delay. Garmon, 972 S.W.2d at 710 (citation omitted).

The 180-day time period for a defendant to be brought to trial under the ICD does not begin to run until the State and the trial court have received notice of the petition. State v. Moore, 774 S.W.2d 590, 593 (Tenn. 1989). Defense counsel asserts in his brief that the trial court received his petition on March 20, 2006. In support of that claim, however, he cites only his statement to the trial court at the hearing on the motion for new trial that, based on his records and his review of the prosecution's file, he "believe[d] the date that we're starting with is March 20th of 2006." The petition itself is not included in the record, and neither the prosecutor nor the trial court said anything to indicate that they were in agreement with defense counsel about the date. In fact, at an earlier hearing, held on September 1, 2006, the prosecutor expressed her belief that the six-month period should begin to run from the date of that hearing, while the trial court proposed that it began on April 25, 2006, the day on which the defendant came into the Shelby County Jail. It is the defendant's duty to prepare a fair, accurate, and complete record on appeal, see Tenn. R. App. P. 24(b), and when necessary parts of the record are not included, we must presume that the trial court's ruling was correct. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991). Thus, we agree with the State that the defendant has waived this issue by his failure to include his petition in the record on appeal.

We further agree with the State that even if the petition was received by the court and the State on March 20, 2006, defense counsel's agreement to the final date proposed by the trial court resulted in a waiver of his speedy trial rights under the ICD. The case was apparently reset at least twice at the request of defense counsel. On September 1, 2006, the parties agreed to a trial date of October 2, 2006. On October 2, however, defense counsel informed the trial court that he had been notified by the prosecutor that drug results from the Tennessee Bureau of Investigation were still pending. The trial court then proposed a new trial date of November 13, to which defense counsel agreed without objection, stating that November 13 "look[ed] like a fine date" for him and that the "week look[ed] very good." Although discussion of the 180-day period had occurred earlier in the case, defense counsel did not again raise the issue until after the jury had already been impaneled and sworn, the indictment read, and opening statements delivered.

This court has concluded that a defendant's failure to object to a trial date proposed outside the 180-day period results in a waiver of his rights under Article III of the ICD. See Garmon, 972 S.W.2d at 711 ("Here, defense counsel from all appearances agreed to reschedule the trial and did not mention the violation of the Interstate Compact on Detainers until afer the time for compliance had passed. That would constitute a waiver."); State v. Suarez, 681 S.W.2d 584, 586 (Tenn. Crim.

App. 1984), overruled on other grounds by State v. Moore, 774 S.W.2d 590 (Tenn. 1989) ("[W]e hold that the defendant's failure to object to the trial date at the time it was set or during the remainder of the 180-day period resulted in waiver of his rights under Article III of the Interstate Compact on Detainers."). We conclude, therefore, that the defendant is not entitled to relief on the basis of this claim.

## II. In-Court Identification

The defendant next contends that the trial court erred in denying his motion to suppress Detective Masters' in-court identification of him on the basis that "the procedure by which the identification was made was so suggestive that the reliability of the identification was irreparably tainted." Specifically, he argues that Detective Masters' pretrial identification of him from a single photograph after learning his name from Walker and from papers found in the pickup truck was analogous to a highly suggestive "show-up" identification, which violated his due process rights and should have resulted in the suppression of the later in-court identification. The State responds by arguing that the record shows that Detective Masters' in-court identification was based on his thirty-minute observation of the defendant at the crime scene. The State further argues that the actions of which the defendant complains amounted to nothing more than normal police investigation.

On appeal, a trial court's findings of fact regarding a motion to suppress are conclusive unless the evidence preponderates against them. State v. Reid, 213 S.W.3d 792, 825 (Tenn. 2006) (citing State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001)). Any question about the "credibility of witnesses, the weight and value of the evidence, and a resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). Thus, unless the defendant demonstrates that "the evidence preponderates against the judgment of the trial court, this court must defer to the ruling of the trial court." Reid, 213 S.W.3d at 825 (citing State v. Cribbs, 967 S.W.2d 773, 795 (Tenn. 1998)). However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

In Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972), the United States Supreme Court established a two-part test to determine when a defendant's due process rights have been violated by a pretrial identification. Under this test, the court first considers whether the identification procedure itself was unduly or unnecessarily suggestive. Id. If the identification procedure is found to have been suggestive, the court next considers "whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." Id. (interior quotations omitted). The factors to be considered in evaluating the reliability of an identification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Id. If, however, the court first determines that the identification procedure itself was neither unnecessarily or

impermissibly suggestive nor likely to create a substantial likelihood of irreparable misidentification, there is no need to apply the totality of the circumstances test outlined in Biggers. See State v. Biggs, 211 S.W.3d 744, 749 (Tenn. Crim. App. 2006) (citations omitted).

Although it is not entirely clear from its order, the trial court appears to have based its denial of the defendant's motion to suppress on findings that the pretrial identification procedure was not unduly suggestive and that Detective Masters' identification was reliable despite any suggestiveness involved in the procedure. The record supports these findings. Detective Masters, a trained narcotics officer, unequivocally testified that his identification of the defendant was based on having observed him with binoculars for approximately thirty minutes as he and Walker worked in the methamphetamine laboratory. After learning the defendant's name from documents found in the vehicle and from Walker, he obtained his photograph from the Attorney General's website and confirmed that he was the second man he had observed at the scene. Detective Masters made positive courtroom identifications of the defendant at both the suppression hearing and at trial, testifying at the suppression hearing that he knew that it was the defendant "as soon as the picture c[a]me up" because he had seen him just a few hours earlier, and at trial that he was able to see the defendant's face with binoculars and was certain in his identification.

The defendant in Biggs, cited by the State, similarly complained that a narcotics officer's pretrial identification of him from his driver's license photograph should have been suppressed because the identification procedure of viewing a single photograph was unduly suggestive. 211 S.W.3d at 748. Unlike in the case at bar, the officer's viewing of the single photograph occurred some two months after the undercover drug transaction in which the officer participated had taken place and the officer was unable to later identify the defendant at trial. Id. This court nevertheless affirmed the trial court's denial of the defendant's motion to suppress the pretrial identification, concluding that the officer's training and experience rendered his identification more reliable than that of the average layperson. We wrote:

> Further, the defendant's argument fails to acknowledge that Officer Thayer was a trained and experienced police officer and not a lay witness. The authorities are clear that this distinction must be made. See Manson v. Brathwaite, 432 U.S. 98, 115, 97 S. Ct. 2243, 2253, 53 L. Ed. 2d 140 (1977) (in assessing the degree of attention paid by the witness, the court noted that "Glover was not a casual or passing observer, as is so often the case with eyewitness identification. Trooper Glover was a trained police officer on duty and specialized and dangerous duty when he called at the third floor of 201 Westland in Hartford on May 5, 1970."); United States v. Dring, 930 F.2d 687, 693 (9th Cir. 1991) (identifications of single photograph of defendant two weeks after event by customs agents not tainted because agents "were trained professionals, expert at observing criminals, and each agent had a good opportunity to view the person on the pier during the night in question"); Thomas v. State, 139 Md. App. 188, 775 A.2d 406, 420 (2001) (six-week delay between drug sale and officer's viewing of single photograph did not make unreliable his in-court identification of defendant when officer had stood "within arm's length, for three or

four minutes under bright lights," officer's "entire attention was focused" on defendant, and officer "was not a lay witness describing a criminal to police; he was a police officer making a mental note of what he had seen during the commission of a crime").

Based upon the proof before the trial court that Officer Thayer, a trained and experienced narcotics officer, viewed the defendant in the daylight on three occasions for a total of at least two minutes, the last and lengthiest of these being face-to-face, and two months later was positive in his identification of the defendant from a photograph, we conclude that the record supports the trial court's determination that the motion to suppress was without merit.

Id. at 751-52.

Detective Masters, a highly trained narcotics officer who was accepted by the trial court as an expert in the detection of methamphetamine laboratories, positively and unequivocally identified the defendant at the suppression hearing and at trial as the man he had observed for thirty minutes working in the methamphetamine laboratory. From his testimony, it was clear that his identification was based on his observation of the defendant at the crime scene and that his identification of the defendant from the photograph was merely to confirm that the name he had obtained matched the person he had observed. We conclude that this procedure was not unduly suggestive and did not taint the detective's in-court identification of the defendant. Accordingly, we affirm the trial court's denial of the defendant's motion to suppress the in-court identification.

### III.  Denial of Discovery Request for Criminal History of Walker

The defendant next contends that the trial court erred in denying his discovery request for the impeaching convictions of Sterritt Walker, arguing that it constituted material exculpatory evidence that the State was compelled to turn over to the defense under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). The State argues, alternatively, that the trial court did not err in denying the request on the basis that the information was available to the defendant as a matter of public record and that any error in denying the request was harmless since Walker's only potential impeaching conviction consisted of being an habitual motor vehicle offender.

The duty to disclose exculpatory evidence extends to all "favorable information" irrespective of whether the evidence is admissible at trial. State v. Robinson, 146 S.W.3d 469, 512 (Tenn. 2004); Johnson v. State, 38 S.W.3d 52, 56 (Tenn. 2001). The prosecution's duty to disclose Brady material also applies to evidence affecting the credibility of a government witness, including evidence of any agreement or promise of leniency given to the witness in exchange for favorable testimony against an accused. Johnson, 38 S.W.3d at 56. Brady, however, does not require the State to investigate for the defendant, see State v. Reynolds, 671 S.W.2d 854, 856 (Tenn. Crim. App. 1984), and the State's duty to disclose does not extend to information that the defense already possesses or is able to obtain

or to information not in the possession or control of the prosecution or another governmental agency. State v. Marshall, 845 S.W.2d 228, 233 (Tenn. Crim. App. 1992).

Furthermore, in order to establish a due process violation under Brady, a defendant must show the following:

1.  The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);

2.  The State must have suppressed the information;

3.  The information must have been favorable to the accused; and

4.  The information must have been material.

State v. Edgin, 902 S.W.2d 387, 389 (Tenn. 1995) (citations omitted).

In denying the request, the trial court noted that the information the defendant sought was a matter of public record and available to the defendant. We conclude that the trial court did not err in this ruling. Rule 16 of the Tennessee Rules of Criminal Procedure provides that the State shall furnish the defendant's prior record to the defense upon request. Tenn. R. Crim. P. 16(a)(1)(B). There is nothing in the rule that requires the State to furnish the prior arrest record of a prosecution witness. Furthermore, there is nothing in the record to show that the information was not obtainable by the defendant or that the State did anything to prevent him from accessing it. At the hearing on the motion for new trial, the prosecutor observed that the presentence report of Walker, who had already been convicted and sentenced, was included in the clerk's jacket and was available to the defense. The defendant is not entitled to relief on the basis of this claim.

## IV.  Consecutive Sentencing

As his final issue, the defendant contends that the trial court erred in ordering that his state sentences be served consecutively to the sentences in his federal case, arguing that the trial court failed to take into consideration the length of his federal sentence or the fact that ordering consecutive sentences "would effectively result in a prison term of approximately 20 years." The State argues that the trial court considered the appropriate factors and properly imposed consecutive sentencing under Rule 32 of the Tennessee Rules of Criminal Procedure.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby,

823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

Rule 32(c)(2) of the Tennessee Rules of Criminal Procedure provides in pertinent part:

If the defendant has additional sentences or portions thereof to serve, as the result of conviction in other states or in federal court, the sentence imposed shall be consecutive thereto unless the court shall determine in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders.

We agree with the State that the trial court appropriately considered the rule and applicable case law in its imposition of consecutive sentencing. The trial court stated:

Looking at concurrent/consecutive with federal convictions, we have a mandatory consecutive sentence nature subject to the Court's discretion in Rules of Criminal Procedure 32(c)(2).

Quoting from State versus Brown at 53 S.W.3rd page 287, "This Rule of Criminal Procedure provides that when the Defendant has additional sentences or portions thereof to serve as a result of a conviction in other states or in Federal Court, the sentence imposed shall be consecutive thereto unless the Court shall determine in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders."

I see no fact or circumstance in this case which would cause me to depart from Rule 32(c)(2) and order these to be served concurrently with his federal sentence, so, therefore, they're going to be run consecutively to those other two federal sentences.

The record supports the trial court's determination that the defendant failed to establish good cause for ordering that the sentences not be served consecutively.

**CONCLUSION**

Having reviewed the record and found no error, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE